# UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **HENRY PHILLIPS** | **CIVIL ACTION** |
| **versus** | **NO. 13-5868** |
| **N. BURL CAIN, WARDEN** | **SECTION: "J" (1)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Henry Phillips, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On October 19, 2009, he was convicted of purse snatching under

Louisiana law.[1] On November 9, 2009, he was sentenced to a term of ten years imprisonment.[2] On December 2, 2009, he was found to be a third offender,[3] and he was then resentenced as such to a term of life imprisonment on January 20, 2010.[4] The Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence on February 17, 2011,[5] and the Louisiana Supreme Court denied his related writ application on October 7, 2011.[6]

On or about October 29, 2012, petitioner filed an application for post-conviction relief with the state district court.[7] That application was denied on December 11, 2012.[8] His related

---

[1] State Rec., Vol. III of IV, transcript of October 19, 2009, p. 44; State Rec., Vol. I of IV, minute entry dated October 19, 2009; State Rec., Vol. I of IV, jury verdict form.

[2] State Rec., Vol. III of IV, transcript of November 9, 2009; State Rec., Vol. I of IV, minute entry dated November 9, 2009.

[3] State Rec., Vol. III of IV, transcript of December 2, 2009; State Rec., Vol. I of IV, minute entry dated December 2, 2009.

[4] State Rec., Vol. III of IV, transcript of January 20, 2010; State Rec., Vol. I of IV, minute entry dated January 20, 2010.

[5] State v. Phillips, 61 So.3d 130 (La. App. 4th Cir. 2011) (No. 2010-KA-0582); State Rec., Vol. III of IV.

[6] State v. Phillips, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV.

[7] State Rec., Vol. I of IV.

[8] State Rec., Vol. IV of IV, Judgment dated December 11, 2012.

writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal on January 30, 2013,[9] and by the Louisiana Supreme Court on July 31, 2013.[10]

On or about September 9, 2013, petitioner filed the instant federal application seeking *habeas corpus* relief.[11]  The state concedes that the application is timely filed.[12]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28

---

[9]  State v. Phillips, No. 2013-K-0072 (La. App. 4th Cir. Jan. 30, 2013); State Rec., Vol. IV of IV.

[10]  State *ex rel.* Phillips v. State, 118 So.3d 1119 (La. 2013) (No. 2013-KH-0458); State Rec., Vol. IV of IV.

[11]  Rec. Doc. 3.  Petitioner has also filed motions requesting that these proceedings be stayed while he exhausts additional claims in the state court courts.  In an Order and Reasons separately issued this date, the undersigned has denied those motions.

[12]  Rec. Doc. 17.

U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established

precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1706 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id. (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant *habeas* relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of

imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011) (citations omitted; emphasis added); see also

Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants – and federal courts – from

using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state

courts.").

The Supreme Court has expressly warned that although "some federal judges find [28

U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law

and apply the strictly deferential standards of review mandated therein. White v. Woodall, 134 S.

Ct. 1697, 1701 (2014).

II. Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts

of this case as follows:

The victims, Tracie and Jason Socha, visitors from San Diego, California, were in New Orleans on March 21, 2009 to attend a friend's wedding. That morning, after they finished breakfast, they stopped at a McDonalds located on St. Charles Avenue to purchase a milkshake. Mr. Socha gave his wallet to his wife. She entered McDonalds while he waited outside. After she made her order and

paid the cashier, Mrs. Socha placed the wallet on the counter while she waited for her change. She may have had a finger on the wallet. At the very least, her hand was next to the wallet. A man then came up from behind her and grabbed the wallet. Mrs. Socha ran out of McDonalds after the man and called to her husband. The Sochas caught up with him when he stopped next to a bright blue bicycle. Mr. and Mrs. Socha attempted to talk the man into taking only the cash from the wallet and giving the wallet back to them. At first, the man declined. He also moved his hand towards the waist of his pants and asked them whether they wanted to be shot. Mr. Socha continued to talk to the man despite the threat. After a minute or two, the man took a twenty dollar bill that was clipped to the outside of the wallet and threw the wallet to the ground. The man then got on his bicycle and left. Employees of McDonalds followed the man on his bicycle to a house located a block behind the McDonalds on Carondelet Street.

Sergeant Young responded to the call and met with Mr. and Mrs. Socha in the parking lot of McDonalds. The sergeant then took them to the house on Carondelet Street where they could see the blue bicycle parked out front. A door on one of the apartments at the house was partially opened. Sergeant Young called for backup. Once Sergeant Philibert arrived, the two officers entered the opened door and encountered two males. One fit the description of the perpetrator who had been described as an older black male wearing a blue and white shirt. The man was escorted from the house and positively identified by Tracie and Jason Socha as the perpetrator. The man was arrested. A search incident to his arrest revealed a twenty dollar bill in the front pocket of his pants.

Both Tracie and Jason Socha identified the defendant in court as the man who took Mr. Socha's wallet. The jury also viewed a surveillance tape taken at the McDonalds restaurant and listened to the 911 call made by a manager of McDonalds.[FN1]

[FN1]    Sergeant Brisoce, who works in the Communications Division of the police department, testified as to the authenticity of the 911 tape heard by the jury. John Preston, a facility manager with McDonalds who maintains the surveillance tapes

taken at the restaurant, testified as to the authenticity
of the tape viewed by the jury.[13]

## III. Petitioner's Claims

## A. Sufficiency of the Evidence to Convict Petitioner of Purse Snatching

Petitioner's first claim is that there was insufficient evidence to support his
conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim,
holding:

> By his first assignment of error, the defendant asserts that the
> district court erred by denying his post-verdict judgment of acquittal.
> He argues that the evidence was insufficient to convict beyond a
> reasonable doubt.
> In State v. Brown, 2003-0897, p. 22 (La. 4/12/05), 907 So.2d
> 1, 18, the Court set forth the standard for determining a claim of
> insufficiency of evidence:
>
>> When reviewing the sufficiency of the
>> evidence to support a conviction, Louisiana appellate
>> courts are controlled by the standard enunciated in
>> Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61
>> L.Ed.2d 560 (1979). Under this standard, the
>> appellate court "must determine that the evidence,
>> viewed in the light most favorable to the prosecution,
>> was sufficient to convince a rational trier of fact that
>> all of the elements of the crime had been proved
>> beyond a reasonable doubt." State v. Neal, 00-0674,
>> (La. 6/29/01) 796 So.2d 649, 657 (citing State v.
>> Captville, 448 So.2d 676, 678 (La. 1984)).
>> When circumstantial evidence is used to prove
>> the commission of the offense, La. R.S. 15:438
>> requires that "assuming every fact to be proved that
>> the evidence tends to prove, in order to convict, it
>> must exclude every reasonable hypothesis of

---

[13] State v. Phillips, 61 So.3d 130, 132-33 (La. App. 4th Cir. 2011) (No. 2010-KA-0582); State
Rec., Vol. III of IV.

innocence." <u>Neal</u>, 796 So.2d at 657. Ultimately, all evidence, both direct and circumstantial must be sufficient under Jackson to prove guilt beyond a reasonable doubt to a rational jury. <u>Id</u>. (citing <u>State v. Rosiere</u>, 488 So.2d 965, 968 (La. 1986)).

Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon. La. R.S. 14:65.1. The defendant argues that the State failed to prove that the wallet was in the immediate control of Mrs. Socha when it was snatched.

Situations in which the wallet or purse was not in the physical possession of the victim at the time it was snatched have been addressed by this court and the Louisiana Supreme Court.

In <u>State v. Anderson</u>, 418 So.2d 551 (La. 1982), the court held that a purse snatching did not require an actual face-to-face confrontation. It then affirmed a conviction for purse snatching where the victim's purse had been taken from the floor near her legs. In <u>State v. Pierre</u>, 2004-0010 (La.App. 4 Cir. 2/25/04), 869 So.2d 246, this court found that the evidence was sufficient to show that the victim's purse was in her immediate control when the defendant snatched the victim's purse that was lying next to her on the counter of a grocery store.

As in <u>Anderson</u> and <u>Pierre</u>, the wallet that was snatched by the defendant was in the immediate control of Mrs. Socha. The wallet was lying right next to her hand on the counter of the McDonalds, and she may have even had a finger on the wallet. This assignment of error lacks merit.[14]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[15]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows

---

[14] <u>Phillips</u>, 61 So.3d at 133-34; State Rec., Vol. III of IV.

[15] <u>State v. Phillips</u>, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV.

that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000).  For the following reasons, it is clear that he has not made the showing in the instant case.

As the state court correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319.  Importantly, "[t]he Jackson inquiry 'does *not* focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added).  Therefore, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. ...  Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Cavazos v. Smith, 132 S. Ct. 2, 4 (2011).

Moreover, as the United States Fifth Circuit Court of Appeals has observed:  "[A] state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence.  The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection

of due process of law." Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted). Further, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).[16]

Under these stringently deferential standards of review, petitioner is not entitled to relief. As noted by the state court, he was convicted of purse snatching. Louisiana law provides: "Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon." La.Rev.Stat.Ann. § 14:65.1(A). Petitioner does not contest that he was the perpetrator of the crime, that the wallet was "snatched" from the victim, or that something of value was taken. Rather, his argument is that the wallet was not "in the immediate control of another."[17] However, the victim testified at trial that the

---

[16]    It must additionally be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

[17]    See, e.g., Rec. Doc. 18, p. 2.

wallet was next to her hand on the McDonald's counter. Whether or not she was actually touching the wallet at the time it was snatched is not determinative. In State v. Harrche, 81 So.3d 861 (La. App. 5th Cir. 2011), writ denied, 97 So.3d 372 (La. 2012), the court explained:

> The [Louisiana] Supreme Court has held that "'snatching'" does not require an actual face-to-face confrontation, and is distinguished from "'use of force'" and "'intimidation'" by the statute's very wording. State v. Anderson, 418 So.2d 551, 552 (La. 1982). The State need only show that force **or** intimidation **or** snatching was used to accomplish the theft of something of value from the purse that is within the immediate control or on the person. State v. Boss, 03-133 (La.App. 5 Cir. 5/28/03), 848 So.2d 75, 78 (emphasis as found in decision), writ denied, 03-1968 (La. 5/14/04), 872 So.2d 508. LSA-R.S. 14:65.1 does not require that the victim know at the time of the taking that his or her property is taken or snatched. State v. Smith, 07-2028, p. 11 (La. 10/20/09), 23 So.3d 291, 298 n.3 (per curiam). It remains possible in Louisiana to "snatch" a victim's purse from her possession without her awareness at the time of the taking. Id.
>
> In Anderson, supra, sufficient evidence of a purse snatching was found where the victim testified only that she felt a vibration, then noticed that her purse was no longer on the floor by her feet. In State v. Capote, 474 So.2d 497 (La.App. 4 Cir. 1985), the court held that even though the victim did not feel her purse being removed from the back of her chair, the theft constituted purse snatching, recognizing that no face-to-face confrontation was required. The court found sufficient evidence to support the purse snatching conviction.
>
> In State v. Pierre, 04-0010, p. 1 (La.App. 4 Cir. 2/25/04), 869 So.2d 246, 247, the defendant was found guilty of attempted purse snatching. On appeal, the defendant argued there was insufficient proof that his actions constituted attempted purse snatching when there was no evidence offered that the purse contained anything of value or that it was taken from the victim's immediate control. Pierre, 04-0010 at 3-4, 869 So.2d at 248-49. The victim in Pierre testified that when her purse was taken it was right next to the cash register where she had been standing until the defendant pushed her aside. Pierre, 04-0010 at 4, 869 So.2d at 249. The court found that the evidence was sufficient to show that the defendant "snatched" the purse, noting that the victim saw the defendant with her purse, which

seconds before had been in her immediate control.  The court found that "[s]uch is adequate evidence even if he merely picked it up from the counter."  Pierre, 04-0010 at 5, 869 So.2d at 249.

In Boss, 848 So.2d at 76, the defendant challenged the sufficiency of the evidence used to convict him of purse snatching.  In Boss, while grocery shopping, the victim placed her purse in the top compartment of the grocery cart and walked to the dairy case, while pushing the cart.  She parked the cart and stepped about three feet away from it to retrieve milk.  When she returned to her cart, her purse was missing, and she observed someone proceeding through the grocery aisle with her purse on his shoulder.  She screamed and began to chase him through the store.  The suspect dropped the purse at the store entrance and ran into the parking lot.  Id.

In Boss, the Jefferson Parish District Attorney filed a bill of information charging the defendant with theft of goods, but shortly before trial, the State amended the bill of information to reflect a purse snatching charge.  The defendant was found guilty as charged after a bench trial.  Id. at 76-77.  On appeal, the defendant argued that the State failed to prove an essential element of the crime of purse snatching and argued that the matter should have been considered a theft.  Id. at 77.  This Court recognized that the District Attorney has the sole discretion to choose under which law he will prosecute.  Id.  This Court also determined that even though there was no eyewitness to the "snatching," it found that the State proved by circumstantial evidence the essential elements of the purse snatching offense beyond a reasonable doubt.  This Court recognized that prior to the victim finding her purse missing, the victim had her purse, which contained things of value, and it was in her immediate control.  This Court noted that the victim turned away to retrieve some milk and in the length of time that it took to do that her purse was gone.  This Court further recognized that the victim immediately spotted the defendant with her purse in his possession as he attempted to flee the store.  Another witness saw the defendant running through the store with the purse on his arm as well.  This Court concluded that the evidence was sufficient to sustain the purse snatching conviction.  Id. at 78.

Harrche, 81 So.3d at 866-67.  The court in Harrche then went on to find sufficient evidence to support the purse snatching conviction in that case, where the evidence showed that the defendant

grabbed the victim's purse from her nearby shopping cart as she was loading groceries into a vehicle. Id. at 867-68.

Generally, a victim's testimony and positive identification of a defendant are sufficient evidence to support a conviction if the elements of the crime have been proven. Peters v. Whitley, 942 F.2d 937, 941-42 (5th Cir. 1991); see also Fetterley v. Whitley, No. 94-30310, 1994 WL 708655, at *1 n.6 (5th Cir. Dec. 6, 1994); Holderfield v. Jones, 903 F. Supp. 1011, 1017 (E.D. La. 1995). Moreover, based on the foregoing, it is clear that the facts of this case as recounted in the Mrs. Socha's testimony are sufficient to satisfy the element of "immediate control" for purse snatching under Louisiana jurisprudence, and it is further clear that this federal *habeas* court must defer to the Louisiana state courts' interpretation of the state's criminal statutes. See Weeks v. Scott, 55 F.3d 1059, 1063 (5th Cir. 1995) ("It is not our function as a federal appellate court in a habeas proceeding to review a state's interpretation of its own law, and we defer to the state courts' interpretation of the Texas attempt statute." (citation omitted)).

For all of these reasons, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*. Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly-deferential standards of review which must be applied, the claim should be denied.

## B.  Excessive Sentence

Petitioner's second claim is that his sentence was excessive.  On direct appeal, the

Louisiana Fourth Circuit Court of Appeal rejected this claim, holding:

> By his second assignment of error, the defendant maintains that the district court abused its discretion when it sentenced him to the life sentence mandated by La. R.S. 15:529.1 without any inquiry as to whether the sentence was excessive under the facts of the case as required by State v. Dorthey, 623 So.2d 1276 (La. 1993).  He urges that the district court erred in finding that it had no discretion to impose a lesser sentence.
>
> However, the record shows that defense counsel neither objected when the court imposed the life sentence following the multiple offender adjudication nor did he file a motion to reconsider sentence as mandated by La.C.Cr.P. art. 881.1.  This court has held that the failure to file a motion to reconsider sentence or to object to the sentence at the time it is imposed precludes a defendant from raising a claim regarding his sentence on appeal.  State v. Wilson, 2006-1421, p. 16 (La.App. 3/28/07), 956 So.2d 41, 51; State v. Rodriguez, 2000-0519, p. 14 (La.App. 4 Cir. 2/14/01), 781 So.2d 640, 649; State v. Tyler, 98-1667, p. 14 (La.App. 4 Cir. 11/24/99), 749 So.2d 767, 775.[FN2]  Therefore, this assignment of error was not preserved for review.  Even if it had been preserved for review, the defendant failed to make the requisite showing that a lesser sentence should have been imposed.

> > [FN2] Counsel filed a motion specifically seeking to have the ten-year sentence imposed on November 9, 2009 reconsidered.  The motion was denied on December 2, 2009.

> In State v. Rice, 2001-0215, p. 5-6, (La.App. 4 Cir. 1/16/02), 807 So.2d 350, 354, this court reviewed the nature of the habitual felony offender sentencing scheme and the standard for departing from it:

> > Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable

goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993). However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional. Johnson, 97-1906, pp. 5-6, 709 So.2d at 675; see also State v. Young, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527. There must be substantial evidence to rebut the presumption of constitutionality. State v. Francis, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461. To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must show by clear and convincing evidence that he is exceptional, which in this context means that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Lindsey, 99-3256, p. 5 (La. 10/17/00), 770 So.2d 339, 343; Johnson, 97-1906, p. 8, 709 So.2d at 677. "Departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations." Id.

Prior to being sentenced, the defendant addressed the court. He stated that he was fifty-three years old and that he is a high school graduate. He worked three jobs since his release from prison two years ago. The defendant urged that he never hurt anyone during any of his crimes and that he was never found with a weapon. He also stated that he has an unspecified illness and that he has children and grandchildren. Finally, the defendant argued that he only committed a theft upon the victims here.

None of the mitigating factors presented by the defendant overwhelms the presumption that the legislatively-mandated sentence was appropriate. His two prior convictions were for simple robbery and armed robbery. In the case at hand, the defendant implied that he had a weapon and threatened to shoot the victims.

Notably, the defendant committed his offense after the effective date of the amendments reducing the mandatory minimum sentence for habitual offenders. Thus, even after the legislature decided to reduce sentences for a variety of offenses and offenders by passing Act 403, a life sentence was still the minimum which could be imposed on the defendant under La. R.S. 15:529.1(A)(2)(b)(i)(ii). The life sentence was mandatory because the instant felony conviction and two of his prior felony convictions were crimes of violence as defined by La. R.S. 14:2(13). Thus, despite his attempt to present mitigating factors to the court, the defendant failed to provide substantial evidence that exceptional circumstances justified a downward departure from the mandatory term of life imprisonment. See State v. Trackling, 2007-0068 (La.App. 4 Cir. 5/16/07), 958 So.2d 1209. Accordingly, the district court did not err when it imposed a life sentence.[18]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[19]

To the extent petitioner is arguing that his sentence is excessive or otherwise inappropriate under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only to correct violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the legality of petitioner's sentence under state law. Brunet v. Goodwin, Civ. Action No. 12-1974, 2013 WL 623505, at *12 (E.D. La. Jan. 22, 2013) ("[E]ven if Brunet's sentences were excessive under the Louisiana Constitution or if the trial court failed to comply with state law concerning sentencing procedures, which are issues this court need not and does not reach, those errors would

---

[18] Phillips, 61 So.3d at 134-35; State Rec., Vol. III of IV.

[19] State v. Phillips, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV.

not be correctable in a federal habeas corpus proceeding."), <u>adopted</u>, 2013 WL 619278 (E.D. La. Feb. 19, 2013).

Further, even if petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, and even if that claim could be considered exhausted and not procedurally barred, which is doubtful, the federal claim is without merit. In <u>Solem v. Helm</u>, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." <u>United States v. Gonzales</u>, 121 F.3d 928, 942 (5th Cir. 1997) (citing <u>Rummel v. Estelle</u>, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." <u>Gonzales</u>, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." <u>Id</u>. (quotation marks omitted).

Interpreting <u>Solem</u> in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).  Moreover, when, as here, evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses."  Id.

The Fifth Circuit has noted that Rummel v. Estelle, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment."  Gonzales, 121 F.3d at 943.  In Rummel, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in Rummel falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

Gonzales, 121 F.3d at 943 (footnote omitted).

In light of the finding in Rummel that a life sentence was not excessive for the relatively minor offenses involved in that case, this Court has no basis for finding that petitioner's enhanced life sentence as a third offender is grossly disproportionate where all of petitioner's crimes (the instant conviction of purse snatching and his predicate convictions of simple robbery and armed robbery) were obviously more serious.  In that the sentence is not grossly disproportionate, this Court's "inquiry is finished. "  Gonzales, 121 F.3d at 942.

## C.   Sufficiency of the Evidence to Adjudicate Petitioner a Third Offender

Petitioner's third claim is that there was insufficient evidence to support his habitual offender adjudication.  The state argues that this claim is procedurally barred.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, the state courts clearly rejected petitioner's claim on procedural grounds.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected this claim, holding:

> By his third assignment of error, the defendant contends that the evidence presented at the multiple bill hearing was insufficient because the State failed to present a contemporaneous record of his prior guilty plea colloquies.
>
> The record contains no written response to the multiple bill as required by La. R.S. 15:529.1(D)(1)(b), and there was no oral objection made at the multiple bill hearing raising this issue.  Therefore, appellate review of whether the defendant was properly Boykinized on the prior convictions is precluded.  See State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72.[20]

---

[20]  Phillips, 61 So.3d at 135-36; State Rec., Vol. III of IV.

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[21]

The procedural rules invoked here are obviously independent of the merits of petitioner's federal claim. Therefore, the Court needs only to determine whether that rule was "adequate."

"The [procedural bar] doctrine presumes that a state procedural ground is adequate ... and, ordinarily, the burden is on the habeas petitioner to demonstrate otherwise." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In order to establish that a state procedural rule is not "adequate," a petitioner bears the burden of showing that the state did not strictly or regularly follow the procedural rule. Stokes v. Anderson, 123 F.3d 858, 860 (5th Cir. 1997). Here, petitioner has made no attempt whatsoever to establish that the rule was not strictly or regularly followed. Moreover, the procedural rules invoked in this case have in fact been held to be "adequate" to bar such a claim from federal review, see Weaver v. Cain, Civ. Action No. 04-1642, 2006 WL 2792427, at *10-11 (E.D. La. Sept. 25, 2006), and this Court knows of no reason to find otherwise in the instant case.

Where, as in the instant case, the state courts have rejected a petitioner's claim based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result

---

[21] State v. Phillips, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV. "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground." Finley, 243 F.3d at 218.

in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).

In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the

petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816

(5th Cir. 1999) (quotation marks omitted).  Objective factors that can constitute cause include

interference by officials that makes compliance with the state procedural rule impracticable, a

showing that the factual or legal basis for the claim was not reasonably available to counsel, and

ineffective assistance of counsel.  Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).  Here,

petitioner has not argued, much less established, cause for this procedural default.  "Absent a

showing of cause, it is not necessary for the court to consider whether there is actual prejudice."

Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

In that petitioner has not met the "cause and prejudice" test, this Court should

consider his claim only if the application of the procedural bar would result in a "fundamental

miscarriage of justice."  However, the "fundamental miscarriage of justice" exception "applies only

in extraordinary cases" and, in the context of a defaulted habitual offender claim, requires the

petitioner "to establish that he is actually innocent of the habitual offender sentence enhancement

by showing that but for a constitutional error he would not have been legally eligible for the

sentence he received."  Sumrell v. Mississippi, 403 Fed. App'x 959, 961 (5th Cir. 2010); accord

Sones v. Hargett, 61 F.3d 410, 418 (5th Cir. 1995); LeBanks v. Cain, Civ. Action No. 09-7709, 2010

WL 5055989, at *6 (E.D. La. Oct. 25, 2010), adopted, 2010 WL 5057424 (E.D. La. Dec. 6, 2010).

Petitioner has failed to show that he was not in fact a third offender legally eligible for a term of life

imprisonment, and, therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

## D.  Perjured Testimony

Petitioner's fourth claim is that the prosecutor used perjured testimony to obtain the conviction.  On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected this claim, holding:

> [T]he defendant asserts that the state knowingly presented the perjured testimony of Mrs. Socha to prove that she had immediate control over the wallet when she testified that she may have had a finger on the wallet as it lay on the counter at McDonald's.  He urges that her testimony conflicts directly with the video tape of the incident that was played for the jury.  He also claims that her testimony conflicts with the motion hearing testimony of Sergeant Young wherein Sergeant Young testified that the wallet was placed on the counter momentarily while Mrs. Socha talked to the cashier.  The defendant insists that the state's sole purpose for using the alleged perjured testimony was to upgrade a misdemeanor theft to a felony and subsequently charge him as a multiple offender.
>
> Where a prosecutor allows a state witness to give false testimony without correction, a reviewing court must reverse the conviction if the witness's testimony reasonably could have affected the jury's verdict, even if the testimony goes only to the credibility of the witness.  Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); State v. Broadway, 96–2659, p. 17 (La. 10/19/99), 753 So.2d 801, 814; State v. Williams, 338 So.2d 672, 677 (La. 1976).  To prove a Napue claim, the defendant must show that the prosecutor acted in collusion with the witness to facilitate false testimony.  Broadway, 96-2659, p. 17, 753 So.2d at 814.  Furthermore, fundamental fairness, i.e., due process, is offended "when the State, although not soliciting false evidence, allows it to go uncorrected when it appears."  Napue, 360 U.S. at 269, 79 S.Ct. 1173, 3 L.Ed.2d 1217.  When false testimony has been given under such circumstances, the defendant is entitled to a new trial unless there is no reasonable likelihood that the alleged false testimony could have affected the outcome of the trial.  Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).  However, the grant of a

new trial based upon a Napue violation is proper only if: (1) the statements at issue are shown to be actually false; (2) the prosecution knew they were false; and (3) the statements were material. United States v. O'Keefe, 128 F.3d 885, 893 (5 Cir. 1997).

Nothing that the defendant presents reflects that the state acted in collusion with Mrs. Socha when she testified that she "may" have had a finger on the wallet. Also, as previously referenced herein, Mrs. Socha was not required to be in physical control of the wallet when it was snatched. Thus, her statement that she may have had a finger on the wallet was not material and did not affect the outcome of the trial.[22]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[23]

A claim of prosecutorial misconduct, including the use of false testimony, presents a mixed question of law and fact. Harvey v. Cain, Civ. Action No. 13-2994, 2013 WL 6490484, at *5 (E.D. La. Dec. 10, 2013). Therefore, to obtain federal relief, petitioner must show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). For the following reasons, it is clear that he has not made that showing.

It is true that due process may be violated if a prosecutor knowingly uses false testimony at trial or allows untrue testimony to go uncorrected. Giglio v. United States, 405 U.S. 150, 153 (1972); Napue v. Illinois, 360 U.S. 264, 269 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996). However, as the state court correctly noted, a petitioner is entitled to relief on such a claim only if he shows that (1) the testimony in question was actually false, (2) the prosecutor knew it was false, and (3) the testimony was material. Duncan v. Cockrell, 70 Fed. App'x 741, 744

---

[22] Phillips, 71 So.3d at 136; State Rec., Vol. I of IV.

[23] State v. Phillips, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV.

- 24 -

(5th Cir. 2003). "Evidence is 'false' if, *inter alia*, it is specific misleading evidence important to the prosecution's case in chief. False evidence is 'material' only if there is any reasonable likelihood that it could have affected the jury's verdict." Id.

Here, even if petitioner could show that Mrs. Socha's testimony regarding whether she had a finger on the wallet was false, which is obviously doubtful at best,[24] he cannot show that the testimony on that point was "material." As already explained in detail *supra*, whether Mrs. Socha was physically touching the wallet at the time it was "snatched" is of no consequence; even if she was not, the wallet was still in her "immediate control," which is all that was legally required.

For all of these reasons, petitioner cannot show that the state court's decision denying this claim "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Therefore, relief is not warranted.

## E. Sufficiency of the Bill of Information

Petitioner's fifth and sixth claims challenge the sufficiency of the bill of information. On direct appeal, the Louisiana Fourth Circuit Court of Appeal held:

> The defendant argues in his third pro se assignment of error that the bill of information was defective because it failed to cite the statute.
> A post-verdict attack on the sufficiency of an indictment does not provide grounds for setting aside a conviction unless the indictment failed to give fair notice of the offense charged, or failed to set forth any identifiable offense. State v. Cavazos, 610 So.2d 127

---

[24]  Mrs. Socha did not unequivocally state that she had a finger on the wallet; rather, she testified that she may have had a finger on it or that her finger may have been on the counter next to the wallet. State Rec., Vol. III of IV, transcript of October 19, 2009, p. 19.

(La. 1992). The Louisiana Code of Criminal Procedure article 464 provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

> In the present case, the defendant was charged with a violation of La. R.S. 14:65.1. Purse snatching is the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon.
> Count one of the bill of information alleged that the defendant "committed theft of a wallet from the person or within the immediate control of Traci Socha, by use of force, intimidation, or by snatching."
> While the bill of information does not track the exact language of the statute or cite the statute, it gives fair notice of the crime of which the defendant was charged and ultimately convicted, that is, purse snatching. Thus, the bill of information complies with La.C.Cr.P. article 464 in that it did not mislead defendant to his prejudice. This assignment of error also lacks merit.[25]

The Louisiana Supreme Court then denied relief without assigning additional reasons.[26]

---

[25] Phillips, 71 So.3d at 136-37; State Rec., Vol. I of IV.

[26] State v. Phillips, 71 So.3d 311 (La. 2011) (No. 2011-KO-0582); State Rec., Vol. I of IV. In the state post-conviction proceedings, petitioner then again challenged the bill of information. The state district court rejected the claim, holding:

> Petitioner asserts that the State violated his liberty interest by taking him to trial without giving him fair notice of the offense charged. A review of the record shows that this claim had been previously addressed and denied by the Fourth Circuit Court

The sufficiency of a state charging instrument is not a matter for federal *habeas* relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir. 1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made *only* by looking to the law of the state." Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

Under Louisiana law, "[a] defendant may not complain of technical insufficiency in an indictment for the first time after conviction, when the indictment fairly informed the accused of the charge against him and the defendant is not prejudiced by the defect." State v. Johnson, 822 So.2d 840, 842 (La. App. 5th Cir. 2002). It is true that the bill of information did not contain a statutory citation; however, such an omission is not so serious as render the charging document invalid and deprive the court of jurisdiction. Rather, Louisiana law expressly provides:

---

of Appeals and the Louisiana Supreme Court. State v. Phillips, App. 4 Cir. 2011, 61 So.3d 130, 2010-0582 (La. App. 4 Cir. 2/17/11), writ denied 71 So.3d 311, 2011-0582 (La. 10/7/11). Accordingly, this assignment of error is without merit.

State Rec., Vol. IV of IV, Judgment dated December 11, 2012, p. 1. His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal and by the Louisiana Supreme Court. State v. Phillips, No. 2013-K-0072 (La. App. 4th Cir. Jan. 30, 2013), writ denied, 118 So.3d 1119 (La. 2013); State Rec., Vol. IV of IV.

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. *Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.*

La. Code Crim. P. art. 464 (emphasis added).[27]

Here, as noted, the state courts found that the charging document was legally sufficient as a matter of state law. Obviously, "[t]he principle that state courts are the final arbiters of state law is well-settled." Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013); accord Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir.1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)). Moreover, even if this Court had the authority to second-guess the state courts' interpretations of state law, that would not

---

[27] The Comments to the article additionally explain:

> Citation of the statute alleged to have been violated is a requirement not contained in the A.L.I. Code of Criminal Procedure or the 1928 Louisiana Code, but it is adopted from Fed.Rule 7(c). It is desirable because of the ever-increasing number and complexity of crimes and penal provisions in general statutes. "To know the statute may be as important as to know the facts intended to be proved." Orfield, Criminal Procedure from Arrest to Appeal 258 (1947). The Advisory Committee note to Fed.Rule 7(c) states that the citation requirement "is for the benefit of the defendant and is not intended to cause a dismissal of the indictment, but simply to provide a means by which he can be properly informed without danger to the prosecution." Therefore, the last sentence is added mitigating the effect of error in or omission of the citation.

La. Code Crim. P. art. 464, Comment (c).

be warranted here, because any suggestion that petitioner was mislead as to the nature of the charge against him beggars belief. He clearly had fair notice of the charge and an adequate opportunity to mount a defense to that charge.

For these reasons, this Court has no basis for finding that the bill of information was so fatally defective as to deprive the trial court of jurisdiction. Accordingly, federal *habeas corpus* relief clearly is not warranted with respect to these claims.

## F. Ineffective Assistance of Counsel

In his seventh, eighth, and ninth claims, petitioner argues that he received ineffective assistance of counsel. In the post-conviction proceedings, the state district judge rejected those claims, holding:

> [Petitioner] contends that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment to the United States Constitution. Petitioner argues that counsel was ineffective because: (1) counsel failed to investigate and question known eyewitnesses to the incident; (2) counsel failed to object to the State's admittance the 911 tape recording and incident report; and (3) counsel failed to object to the admittance of "other crimes evidence" presented by the State. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result". Id. at 699. In particular, the defendant must show that his representation fell below an objective standard of reasonableness *and* that but for counsel's errors, the result(s) of the trial would have been different. Id. Further, it is unnecessary to address the issues of both counsel's performance and prejudice to the defendant if the defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 859-60 (La. App. 1st Cir. 1992), writ denied, 614 So.2d 1263 (La. 1993).
>
> In petitioner's first argument, he claims that his trial counsel was ineffective because he failed to investigate and question known

eyewitnesses to the incident. Petitioner contends that an investigation of known eyewitnesses, specifically the McDonald's manager, would have aided the defense in rebutting the victim's testimony at trial. However, the petitioner offers no proof that his trial counsel failed to adequately investigate and question this witness. Additionally, Petitioner fails to show that counsel's representation fell below an objective standard of reasonableness or but for counsel's errors, the end result would have been different. Furthermore, defense counsel's decision to call or not call a witness is a matter of trial strategy and is not *per se* evidence of ineffective assistance. State v. Washington, 00-1312 (La.App. 5 Cir. 5/16/01), 788 So.2d 596, 607, writ denied, 01-1718 (La. 5/3/02), 815 So.2d 94. Accordingly, this claim lacks merit.

Second, Petitioner asserts that trial counsel failed to object to the State's admittance of the 911 tape recording and incident report. Specifically, Petitioner contends that the 911 recording and incident report that was introduced as evidence during the testimony of Sergeant Briscoe was illegal hearsay evidence. A review of the record shows that the 911 tape and incident report was properly authenticated by Sergeant Briscoe from the Communications Division of the New Orleans Police Department, the custodian of record. Further, at trial, Sergeant Briscoe only testified as to the tape's existence and departmental procedures and not to the contents of the tape. Thus, Sergeant Briscoe's statements were not illegal hearsay. Moreover, petitioner fails to show that had his trial counsel objected and had the actual 911 operator who received the call testified the outcome would have been any different. Accordingly, Petitioner's claim is without merit.

Third, Petitioner asserts that trial counsel failed to object to the admittance of "other crimes evidence" presented by the State. Specifically, the petitioner asserts that defense counsel failed to object to the victims' testimonies that petitioner made threatening-like gestures and oral threats to shoot them. Petitioner contends that an objection should have been lodged on the grounds that the testimonies of the threats were not legally relevant to the charged offense of purse snatching.

Generally, evidence of other crimes are inadmissible at trial because of the danger that the trier of fact will convict the defendant of the offense for which he is being tried based on prior criminal or bad acts. State v. Davis, 97-0817, p. 6 (La. App. 4 Cir. 3/24/99), 735 So.2d 708, 711, writ denied, 99-1422 (La. 11/12/99), 749 So.2d 651. However, the Louisiana Supreme Court have approved the admission

of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La. 1978). The res gestae doctrine includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also the testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime, provided a continuous chain of events is evident under the circumstances. State v. Milton, 764 So.2d 1134, 99-2092 (La.App. 4 Cir. 5/17/00); State v. Parker, 536 So.2d 459, 461-462 (La.App. 1 Cir. 1998), writ denied, 584 So.2d 670 (La. 1991).

In the present case, both victim's narrative testimony established that all of the events leading up to the defendant's arrest – taking of the wallet, chasing the defendant, threatening gestures and oral threats – occurred within a short period of time. Thus, the victims' testimonies were as much an integral part of the events leading up to the petitioner's arrest. Moreover, trial counsel could have made a strategic decision not to object to the evidence to avoid emphasizing it to the jury. Such trial strategy decisions do not establish ineffective assistance of counsel. Accordingly, this claim is without merit.[28]

His related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal[29] and by the Louisiana Supreme Court.[30]

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal

---

[28] State Rec., Vol. IV of IV, Judgment dated December 11, 2012.

[29] State v. Phillips, No. 2013-K-0072 (La. App. 4th Cir. Jan. 30, 2013); State Rec., Vol. IV of IV.

[30] State ex rel. Phillips v. State, 118 So.3d 1119 (La. 2013) (No. 2013-KH-0458); State Rec., Vol. IV of IV.

law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S. Ct. 770, 785-86 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary

process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added). For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

As correctly noted by the state district court, ineffective assistance of counsel claims must be analyzed under the two-prong test set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Specifically, a petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. <u>Id</u>. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." <u>Jernigan v. Collins</u>, 980 F.2d 292, 296 (5th Cir. 1993); <u>see also</u> <u>Clark v. Johnson</u>, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two

prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

As to the claim that trial counsel was ineffective for failing to investigate and question known eyewitnesses to the incident, petitioner has established neither deficient

performance nor prejudice. For example, petitioner has failed to offer any evidence, such affidavits from his counsel or the eyewitnesses, proving that the eyewitnesses were not in fact interviewed (or, alternatively, not questioned adequately if they were interviewed). Without such evidence, he has not shown that counsel performed deficiently. Further, even if he had made that showing, he would additionally have to prove that prejudice resulted. To make that showing, he must point to evidence in the record demonstrating that further investigation or more vigorous questioning of the eyewitnesses would actually have revealed additional information beneficial to the defense. See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Here, he has not shown that any such beneficial information would have been revealed; rather, his assertions are entirely speculative and unsupported by even a scintilla of evidence. Such bare speculation is insufficient to prove that prejudice resulted from an allegedly inadequate investigation. See Thomas v. Cain, Civ. Action No. 09-4425, 2009 WL 4799203, at *9 (E.D. La. Dec. 9, 2009).

In a related claim, petitioner argues that his counsel was ineffective for failing to subpoena the eyewitnesses who allegedly could have supported his version of the events. However, as the United States Fifth Circuit Court of Appeals has explained:

> Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain. For this reason, *we require petitioners making claims of ineffective assistance based on counsel's failure to call a witness to demonstrate prejudice by naming the witness, demonstrating that the witness was available to testify and*

> *would have done so, setting out the content of the witness's proposed*
> *testimony, and showing that the testimony would have been favorable*
> *to a particular defense.* This requirement applies to both uncalled lay
> and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted; emphasis added); accord Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) ("[T]o prevail on an ineffective assistance claim based on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Here, petitioner presented no evidence in the state post-conviction proceedings, such as affidavits from uncalled eyewitnesses, demonstrating that they would have testified in a manner beneficial to the defense. Therefore, he clearly failed met his burden with respect to this claim. See, e.g., United States v. Cockrell, 720 F.2d 1423, 1427 (5th Cir. 1983) (courts view "with great caution claims of ineffective assistance of counsel when the only evidence of a missing witness's testimony is from the defendant"); Buniff v. Cain, Civ. Action No. 07-1779, 2011 WL 2669277, at *3 (E.D. La. July 7, 2011); Anthony v. Cain, Civ. Action No. 07-3223, 2009 WL 3564827, at *8 (E.D. La. Oct. 29, 2009) ("This Court may not speculate as to how such witnesses would have testified; rather, a petitioner must come forward with evidence, such as affidavits from the uncalled witnesses, on that issue."); Combs v. United States, Nos. 3:08-CV-0032 and 3:03-CR-0188, 2009 WL 2151844, at *10 (N.D. Tex. July 10, 2009) ("Unless the movant provides the court with affidavits, or similar matter, from the alleged favorable witnesses suggesting what they would have testified to, claims of ineffective assistance of counsel fail for lack of prejudice."); Harris v. Director, TDCJ-CID, No. 6:06cv490, 2009 WL 1421171, at *7 (E.D. Tex.

May 20, 2009) ("Failure to produce an affidavit (or similar evidentiary support) from the uncalled witness is fatal to the claim of ineffective assistance.").

Petitioner likewise did not prove his claims that counsel was ineffective for failing to object to (1) the State's admittance of the 911 recording and related incident sheet and (2) the "other crimes" testimony. It has been noted:

> Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance. In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.

Rios-Delgado v. United States, 117 F. Supp. 2d 581, 589 (W.D. Tex. 2000) (quotation marks omitted); accord Burnett v. Collins, 982 F.2d 922, 930 (5th Cir. 1993); Forman v. Cain, Civ. Action No. 07-4200, 2008 WL 1746710, at *7 (E.D. La. Apr. 14, 2008). Moreover, the United States Supreme Court has clearly held:

> *Judicial scrutiny of counsel's performance must be highly deferential.* It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, *a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.*

Strickland, 466 U.S. at 689 (citation and quotation marks omitted; emphasis added).  In the instant case, petitioner essentially argues that the failure to object to the evidence in question was so wrongheaded that the state court's decision deferring to counsel's strategic choice on this issue was necessarily unreasonable.  For the following reasons, the undersigned simply cannot agree.

As to counsel's failure to object to the 911 recording and related incident sheet, the state courts found that those items did not in fact constitute hearsay evidence under state law.  As already noted, state courts are the final authority on the correct interpretations of state law, and this federal court is not permitted to second-guess their conclusions on such matters.  Moreover, to the extent that petitioner is separately arguing that the admission of the evidence violated his rights under the federal Confrontation Claus, that contention also fails.  For the reasons discussed later in this opinion, there was no Confrontation Clause violation.

Because the evidence was not hearsay and did not violate the federal Confrontation Clause, counsel was not ineffective for failing to object to it on those bases.  Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Additionally, in any event, the Court notes that petitioner alleges that the recording was largely unintelligible when played for the jury and that the incident sheet did not contain any information indicating that a crime had actually been reported or committed.  If those allegations are true, that would seem to harm rather than aid petitioner's claim.  If, as petitioner suggests, the

evidence was not in fact inculpatory, he does not explain, and this Court cannot surmise, how its admission prejudiced the defense.

Lastly, as to the contention that counsel was ineffective for failing to object to the testimony that petitioner threatened the victims (which petitioner refers to as "other crimes" evidence), that claim fares no better.  As noted, the state courts found that the testimony was proper *res gestae* evidence under state law, and, again, it is not proper for a federal court to second-guess the state courts' interpretation of state law.[31]  Because petitioner has not established that the

---

[31]  Even if such review were allowed, this Court would agree that the testimony at issue was properly admitted under state law.  The Louisiana Supreme Court has explained the admissibility of such evidence in the state courts, noting:

> This Court has long approved of the introduction of other crimes evidence, both under the provisions of former R.S. 15:448 relating to *res gestae* evidence and as a matter of integral act evidence under La.C.E. art. 404(B), "when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it."  State v. Brewington, 601 So.2d 656, 657 (La. 1992).  This doctrine encompasses "not only spontaneous utterances and declarations made before and after commission of the crime but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances."  State v. Molinario, 383 So.2d 345, 350 (La. 1980).  We have required a close connexity between the charged and uncharged conduct to insure that "the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."  State v. Haarala, 398 So.2d 1093, 1098 (La. 1981) (emphasis added); see also 1 McCormick on Evidence, § 190, p. 799 (4th ed., John William Strong, ed., 1992) (other crimes evidence may be admissible "[t]o complete the story of the crime on trial by placing it in the context of nearby and nearly contemporaneous happenings.") (footnote omitted).  The *res geaste* [sic] or integral act doctrine thus "reflects the fact that making a case

testimony was improper, he cannot show that counsel was ineffective for failing to make a meritless objection to its admission.

In summary, petitioner has failed to demonstrate that the state court decisions rejecting his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, utilizing the AEDPA's "doubly deferential" standards of review applicable to such claims, this Court should likewise deny relief.

G. Hearsay/Confrontation Clause

Petitioner's tenth claim is the that recording of a 911 call and related incident sheet were wrongly admitted in violation of state evidence law and the federal Confrontation Clause. In the post-conviction proceedings, the state district court did not separately rule on this claim; rather, in ruling on the related ineffective assistance discussed above, the court simply noted that the recording was not inadmissible hearsay evidence.[32]

---

with testimony and tangible things not only satisfies the formal definition of an offense, but tells a colorful story with descriptive richness." Old Chief v. United States, 519 U.S. 172, 186, 117 S.Ct. 644, 653, 136 L.Ed.2d 574 (1997). *The test of integral act evidence is therefore not simply whether the state might somehow structure its case to avoid any mention of the uncharged act or conduct but whether doing so would deprive its case of narrative momentum and cohesiveness, "with power not only to support conclusions but to sustain the willingness of jurors to draw the inferences, whatever they may be, necessary to reach an honest verdict."* Id.

State v. Colomb, 747 So.2d 1074, 1075-76 (La. 1999) (emphasis added). Evidence, such as that at issue here, which explains the sequence of events to the jury is relevant and admissible under the *res gestae* doctrine. See, e.g., State v. Senegal, 19 So.3d 623, 627 (La. App. 3rd Cir. 2009); State v. Clements, 519 So.2d 236, 238 (La. App. 5th Cir. 1988); State v. Johnson, 440 So.2d 838, 842 (La. App. 2nd Cir. 1983).

[32] State Rec., Vol. IV of IV, Judgment dated December 11, 2012, p. 2.

Again, it is not the role of this Court to second-guess the state court's interpretation and application of state law regarding hearsay evidence. Simply put, "[i]n habeas actions, [a federal court] does not sit to review the mere admissibility of evidence under state law." Little v. Johnson, 162 F.3d 855, 862 (5th Cir. 1998). Therefore, to the extent that petitioner is arguing that the state courts misapplied state law regarding hearsay evidence, his claim is not reviewable in this federal proceeding.

That, however, does not end the matter, because petitioner additionally argues that the admission of the evidence also violated federal law, i.e. the federal Confrontation Clause. "Although the protections of the Confrontation Clause and the hearsay rule overlap, they are not co-extensive ...." Gochicoa v. Johnson, 118 F.3d 440, 446 (5th Cir. 1997). The United States Supreme Court has in recent years examined in great detail the protections afforded by the federal Confrontation Clause. The Supreme Court explained:

> The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), we held that this provision bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." A critical portion of this holding ... is the phrase "testimonial statements." Only statements of this sort cause the declarant to be a "witness" within the meaning of the Confrontation Clause. See id., at 51, 124 S.Ct. 1354. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.

Davis v. Washington, 547 U.S. 813, 821 (2006). The Supreme Court continued:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to

meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822.

Interestingly, Davis also involved a Confrontation Clause claim based on the admission of a recording of 911 call. In considering the claim, the Supreme Court noted: "If 911 operators are not themselves law enforcement officers, they may at least be agents of law enforcement when they conduct interrogations of 911 callers. For purposes of this opinion (and without deciding the point), we consider their acts to be acts of the police." Id. at 823. The Supreme Court then went on to hold that statements made in a 911 call seeking immediate police assistance generally are not "testimonial" in nature and, therefore, pose no Confrontation Clause problems. The Supreme Court explained:

[The 911 caller] simply was not acting as a *witness*; she was not *testifying*. What she said was not "a weaker substitute for live testimony" at trial, United States v. Inadi, 475 U.S. 387, 394, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986), like Lord Cobham's statements in Raleigh's Case, 2 How. St. Tr. 1 (1603), or Jane Dingler's *ex parte* statements against her husband in King v. Dingler, 2 Leach 561, 168 Eng. Rep. 383 (1791), or Sylvia Crawford's statement in Crawford. In each of those cases, the *ex parte* actors and the evidentiary products of the *ex parte* communication aligned perfectly with their courtroom analogues. [The 911 caller's] emergency statement does not. No "witness" goes into court to proclaim an emergency and seek help.

Davis, 547 U.S. at 828.

In the instant case, petitioner provides no basis for distinguishing Davis, and, therefore, he has not established that there was any Confrontation Clause violation. Accordingly, this claim should be denied.

## H.  Suggestive Identification

Petitioner's eleventh claim is that the trial court erred by admitting an unduly suggestive identification.  The state argues that this claim is procedurally barred.  The state is correct.

As previously noted, the United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

Here, the state courts clearly rejected petitioner's claim on procedural grounds.  In the post-conviction proceedings, the state district held:  "Petitioner asserts that this Court abused its discretion by allowing the State to submit 'suggestive identification' of the petitioner during the proceedings.  However, Petitioner's claim is one that should have been raised on appeal.  La.C.Cr.P. Art. 930.4."[33]  Without additional reasons assigned, his related writ applications were then likewise denied by the Louisiana Fourth Circuit Court of Appeal[34] and by the Louisiana Supreme Court.[35]

---

[33]  State Rec., Vol. IV of IV, Judgment dated December 11, 2012, p. 3.

[34]  State v. Phillips, No. 2013-K-0072 (La. App. 4th Cir. Jan. 30, 2013); State Rec., Vol. IV of IV.

[35]  State ex rel. Phillips v. State, 118 So.3d 1119 (La. 2013) (No. 2013-KH-0458); State Rec., Vol. IV of IV.

Federal courts have repeatedly and consistently held that Louisiana's rule that a claim regarding an appealable issue is waived if not asserted on direct appeal is an independent and adequate state court rule to support a procedural bar in federal court. See, e.g., Hurd v. Cain, Civ. Action No. 09-3112, 2009 WL 3063354, at *7 (E.D. La. Sept. 23, 2009); Simms v. Cain, Civ. Action No. 07-966, 2008 WL 624073, at *27 (E.D. La. Mar. 4, 2008); Dorsey v. Louisiana, Civ. Action No. 07-036, 2007 WL 1747014, at *4 (E.D. La. June 15, 2007); Hill v. Cooper, Civ. Action No. 04-2588, 2007 WL 458207, at *7 (E.D. La. Feb. 8, 2007); Stevenson v. Cain, Civ. Action No. 06-1244, 2006 WL 2850167, at *14 (E.D. La. Oct. 4, 2006).

Again, where, as here, the state courts have rejected a petitioner's claim based on an independent and adequate state procedural rule, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

As already explained, "[t]o establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992). Here, petitioner has not argued, much less established, cause for this procedural default. "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court should consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice." In this context, to show that there would be a "fundamental miscarriage of justice," a petitioner must make "a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted). Petitioner has not made that showing in this case for the following reasons.

As already noted previously in this opinion, the evidence of petitioner's guilt was constitutionally sufficient to support his conviction. Moreover, for an actual innocence claim to be credible, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." Schlup v. Delo, 513 U.S. 298, 324 (1995). Here, petitioner points to no "new" evidence whatsoever. Rather, he simply argues that the videotape of the crime supports his contention that the stolen wallet was not in fact in the "immediate control" of victim at the time of the crime as required to support a purse snatching conviction. However, that videotape is not "new evidence"; it was introduced at trial.[36] Therefore, he clearly has not made the showing required for an actual innocence claim, i.e. that "no reasonable juror would have found [him] guilty" in light of "new evidence." Schlup, 513 U.S. at 329.

---

[36] State Rec., Vol. III of IV, transcript of October 19, 2009, pp. 15-16 and 41.

For these reasons, this claim is procedurally barred and should not be considered by this Court.

## **RECOMMENDATION**

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Henry Phillips be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[37]

New Orleans, Louisiana, this eighth day of September, 2014.

**SALLY SHUSHAN**
**UNITED STATES MAGISTRATE JUDGE**

---

[37] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.